2001 UT 74

Jim NEBEKER d/b/a Jim Nebeker Trucking, Plaintiff and Appellant,

v.

UTAH STATE TAX COMMISSION, Defendant and Appellee.

Jim Nebeker d/b/a Jim Nebeker Trucking, Petitioner,

v.

Utah State Tax Commission, Respondent.

Nos. 990835, 20000834.

Supreme Court of Utah.

Aug. 21, 2001.

Rehearing Denied Oct. 31, 2001.

Daniel S. Sam, Vernal, Utah, James A. Beckwith, Arvada, Colorado, for plaintiff.

Mark L. Shurtleff, Att'y Gen., Clark L. Snelson, Asst. Att'y Gen., Salt Lake City, for defendant.

DURRANT, Justice:

¶ 1 The Utah State Tax Commission determined that Jim Nebeker d/b/a Jim Nebeker Trucking was deficient in payment of the Utah Special Fuel Tax and imposed a twelve percent interest rate on the amount Nebeker owed. Nebeker filed suit against the Tax Commission in district court alleging the twelve percent interest rate imposed in the initial Tax Commission proceeding violated the Utah Constitution. The trial court dismissed the complaint for lack of jurisdiction. Nebeker again challenged the constitutionality of the twelve percent interest rate in a second proceeding before the Tax Commis-

sion. The Tax Commission dismissed the action, holding it was barred by res judicata because Nebeker did not contest the interest rate's constitutionality in the initial Tax Commission proceeding. Nebeker appeals both the district court's ruling and the Tax Commission's ruling in the second proceeding before it. We affirm the dismissal of both actions.

## BACKGROUND

¶ 2 In reviewing a ruling on a motion to dismiss, we " 'accept the factual allegations in the complaint as true and draw all reasonable inferences from those facts in a light most favorable to [the] plaintiff[ ].' " *Pendleton v. Utah State Bar,* 2000 UT 96, ¶ 5, 16 P.3d 1230 (second alteration in original) (quoting *Cruz v. Middlekauff Lincoln–Mercury, Inc.,* 909 P.2d 1252, 1253 (Utah 1996)).

## I. INITIAL TAX COMMISSION PROCEEDING

¶ 3 Nebeker is an intrastate carrier of water and other fluids used as oilfield commodities. The Tax Commission conducted an audit of Nebeker's "Special Fuel" accounts to determine the amount of diesel fuel Nebeker consumed. In November 1995, following this audit, the Tax Commission served a "Statutory Notice and Tax Assessment" on Nebeker stemming from unpaid taxes under the Motor and Special Fuel Tax Act, Title 59, Chapter 13 of the Utah Code.

¶ 4 The assessment specified the amount of diesel fuel Nebeker consumed and taxed it accordingly. However, section 59–13–301(2)(b) provides, "No special fuel tax is imposed on undyed diesel fuel which . . . is used in a vehicle off-highway [or] is used to operate a power take-off unit of a vehicle." Utah Code Ann. § 59–13–301(2)(b)(iii), (iv) (2000). Accordingly, the assessment exempted from taxation diesel fuel used to drive vacuum motors on Nebeker's water trucks and fuel used by Nebeker to operate vehicles "off-highway," i.e., off of "public highways."

¶ 5 Nebeker disagreed with the Tax Commission's assessment of the tax and filed a petition for redetermination. In this peti-

tion, Nebeker claimed additional exemptions for fuel used to operate vehicles off public highways. On May 12, 1998, the Tax Commission issued an order defining "public highways" as that term applied to the imposition of the special fuel tax. The Tax Commission then asked Nebeker to submit revised estimates of the diesel fuel that was exempted from taxation due to use off public highways. On September 30, 1998, the Tax Commission issued an amended audit and tax assessment.

¶ 6 Nebeker objected to this second audit and assessment, as well, claiming it contained mathematical errors. On March 30, 1999, the Tax Commission issued another amended audit and tax assessment. In this third audit and assessment, the Tax Commission imposed a twelve percent interest rate on Nebeker's deficiencies pursuant to the International Fuel Tax Agreement (IFTA), an agreement into which the Tax Commission entered under section 59–13–501 of the Utah Code. While Nebeker inquired into the Tax Commission's calculation of the interest rate, no petition for redetermination was made, and the Tax Commission's ruling became final. Nebeker paid the amount owed under protest.

## II. DISTRICT COURT PROCEEDING

¶ 7 Following the Tax Commission's third and final assessment, Nebeker filed a petition for relief in the Eighth District Court in June 1999. The petition alleged the Tax Commission's statutory authority for applying a twelve percent interest rate to Nebeker's deficiencies, sections 59–13–501(2)(h) & (6) of the Utah Code, unconstitutionally delegated legislative authority to the Tax Commission. The petition also alleged the Tax Commission's adoption of the twelve percent interest rate failed to comply with the Utah Administrative Procedures Act. Further, the petition claimed Nebeker did not need to exhaust his administrative remedies prior to seeking relief in district court because both asserted claims involved the constitutionality of the Tax Commission's authority to impose the twelve percent interest rate, and the Tax Commission lacked jurisdiction to address these constitutional claims.

¶ 8 The Tax Commission responded by moving to dismiss the petition for lack of jurisdiction. The district court granted this motion in September 1999. The district court's ruling stated as follows:

> Based on the careful reading of the memoranda the Court is of the opinion that it does not have jurisdiction to grant the remedies sought in the petition for failure of the petitioner to exhaust administrative remedies and for the reason set forth in the memoranda and reply memoranda in support of respondent's motion to dismiss.

### III. SECOND TAX COMMISSION PROCEEDING

¶ 9 Following the district court's dismissal of the action, Nebeker appealed that decision to this court. Additionally, Nebeker applied to the Tax Commission for a "refund of overcharge," based solely on the contention that subsections 59–13–501(2)(h) & (6) were unconstitutional. The Auditing Division of the Tax Commission denied this claim. Nebeker filed a petition for redetermination, asking the Tax Commission to reconsider the Auditing Division's decision. The Auditing Division moved to dismiss the case as being barred by res judicata, contending the issue should have been raised in the original assessment proceeding. The Tax Commission agreed and granted the motion to dismiss on the ground that the action was barred by res judicata. Accordingly, Nebeker petitioned this court to review the Tax Commission's dismissal of the second proceeding. Further, in its petition for review, Nebeker contended the Tax Commission had changed its position on available administrative remedies. Specifically, Nebeker argued that before the district court the Tax Commission had asserted Nebeker still had administrative remedies available, while in the second action, the Tax Commission took the position that Nebeker could not apply for any administrative remedies. Accordingly, Nebeker's petition for review seeks sanctions against the Tax Commission for violating the principle of judicial estoppel. We granted the petition to review the Tax Commission's ruling in the second proceeding and consolidated that appeal with Nebeker's appeal from the Eighth District Court's order dismissing his action for lack of jurisdiction.

### DISCUSSION

¶ 10 The three issues before the court on appeal are, first, whether the district court erred in dismissing Nebeker's petition for lack of jurisdiction; second, whether the Tax Commission erred in holding Nebeker's claim was barred by res judicata; and, third, whether this court should impose sanctions against the Tax Commission for violating the principle of judicial estoppel.

### I. DISTRICT COURT RULING

¶ 11 The first issue before us is whether the district court erred in dismissing Nebeker's petition for relief. "We review for correction of error a trial court's order on a motion to dismiss for lack of subject matter jurisdiction." *Schwenke v. Smith*, 942 P.2d 335, 336 (Utah 1997) (citing *Barnard v. Utah State Bar*, 857 P.2d 917, 919 (Utah 1993)).

¶ 12 On appeal, Nebeker contends the trial court's ruling granting the Tax Commission's motion to dismiss was erroneous for five reasons: (1) it was proper for Nebeker to challenge the Tax Commission's action by filing a petition under rule 65B of the Utah Rules of Civil Procedure in district court, (2) Nebeker did not need to exhaust administrative remedies in this case, (3) governmental immunity did not bar Nebeker's action, (4) Nebeker did not file the rule 65B petition outside any relevant limitations period, and (5) neither res judicata nor collateral estoppel bar Nebeker's rule 65B petition. We conclude the trial court correctly dismissed Nebeker's petition as Nebeker failed to exhaust his administrative remedies. Further, we conclude the trial court's dismissal of the action was proper because Nebeker failed to raise the constitutional claims in the initial proceeding before the Tax Commission.

#### A. *Failure to Exhaust Administrative Remedies*

¶ 13 Following the Tax Commission's final assessment, Nebeker filed his petition for relief in district court rather than filing another petition for redetermination with the

Tax Commission. *See* Utah Code Ann. § 59–1–501 ("Any taxpayer may file a request for agency action, petitioning the commission for redetermination of a deficiency."). The district court held that this failure to exhaust administrative remedies barred its consideration of Nebeker's petition. We agree.

¶ 14 As a general rule, "parties must exhaust applicable administrative remedies as a prerequisite to seeking judicial review." *State Tax Comm'n v. Iverson*, 782 P.2d 519, 524 (Utah 1989). "Exceptions to this rule exist in unusual circumstances where it appears that there is a likelihood that some oppression or injustice is occurring such that it would be unconscionable not to review the alleged grievance or where it appears that exhaustion would serve no useful purpose." *Id.* (footnotes omitted); *see also Johnson v. Utah State Ret. Office*, 621 P.2d 1234, 1237 (Utah 1980) ("Exhaustion of administrative remedies may not be necessary when it would serve no useful purpose.").

¶ 15 Nebeker contends that in this case, "exhaustion would serve no useful purpose," *Iverson*, 782 P.2d at 524, because the only claims he raised before the district court were constitutional. Nebeker relies on our earlier opinion in *State Tax Commission v. Wright*, 596 P.2d 634 (Utah 1979). In that case, we stated, " '[I]t is not for the Tax Commission to determine questions of legality or constitutionality of legislative enactments.' ... These questions, however, could have been raised by an independent action in a district court pursuant to Sections 59–11–10[1] or 59–11–11.[2]'" *Id.* at 636 (quoting *Shea v. State Tax Comm'n*, 101 Utah 209, 120 P.2d 274, 275 (1941)). Accordingly, Nebeker argues, his "independent action" in district court was proper. We disagree.

¶ 16 As we noted in *Johnson*, while "[a]dministrative agencies do not generally determine the constitutionality of their organic legislation, ... the mere introduction of a constitutional issue does not obviate the need for exhaustion of administrative remedies." 621 P.2d at 1237. Indeed, " 'if ... an administrative proceeding might leave no remnant of the constitutional question, the administrative remedy plainly should be pursued.' " *Id.* (quoting *Pub. Utils. Comm'n of California v. United States*, 355 U.S. 534, 539–40, 78 S.Ct. 446, 2 L.Ed.2d 470 (1958)). The rationale for this rule is that if a case "involves issues other than the constitutional claim," *id.*, then "pursuit of ... administrative remedies might obviate the need of addressing [a constitutional] issue," *id.*

1. Section 59–11–10 was amended and renumbered as section 59–2–1410 in 1987. *See* 1987 Utah Laws 4, § 259. It was again amended and renumbered as section 59–2–1326 in 1988. *See* 1988 Utah Laws 3, § 183. That section currently reads as follows:

    No injunction may be granted by any court to restrain the collection of any tax or any part of the tax, nor to restrain the sale of any property for the nonpayment of the tax, unless the tax, or some part of the tax sought to be enjoined: (1) is not authorized by law, or (2) is on property which is exempt from taxation. If the payment of a part of a tax is sought to be enjoined, the other part shall be paid or tendered before any action may be commenced. Utah Code Ann. § 59–2–1326 (2000).

2. Section 59–11–11 was amended and renumbered as section 59–2–1411 in 1987. *See* 1987 Utah Laws 4, § 260. It was again amended and renumbered as section 59–2–1327 in 1988. *See* 1988 Utah Laws 3, § 184. That section currently reads as follows:

    Where a tax is demanded or enforced by a taxing entity, and the person whose property is taxed claims the tax is unlawful, that person may pay the tax under protest to the county treasurer. The person may then bring an action in the district court against the officer or taxing entity to recover the tax or any portion of the tax paid under protest.
    Utah Code Ann. § 59–2–1327. A similar action may be filed under section 59–1–301. That section states as follows:

    In all cases of levy of taxes, licenses, or other demands for public revenue which is deemed unlawful by the party whose property is taxed, or from whom the tax or license is demanded or enforced, that party may pay under protest the tax or license, or any part deemed unlawful, to the officers designated and authorized by law to collect the tax or license; and then the party so paying or a legal representative may bring an action in the tax division of the appropriate district court against the officer to whom the tax or license was paid, or against the state, county, municipality, or other taxing entity on whose behalf it was collected, to recover the tax or license or any portion of the tax or license paid under protest.
    Utah Code Ann. § 59–1–301.

¶ 17 In this case, had Nebeker petitioned for a redetermination of his deficiency, the Tax Commission could have determined that the imposition of the interest rate was unwarranted. For instance, the Tax Commission had jurisdiction to address Nebeker's challenge to the interest rate under the Administrative Procedures Act. Further, Nebeker contends that even if constitutional, IFTA does not apply to him as he operates an intrastate, and not interstate, business. If the Tax Commission agreed with this and redetermined Nebeker's taxation, the twelve percent interest rate would be inapplicable. Thus, Nebeker could have avoided the constitutional questions he raised below if he had sought administrative review of his non-constitutional claims. Therefore, the trial court properly granted the Tax Commission's motion to dismiss because Nebeker failed to exhaust his administrative remedies.[3]

### B. Waiver of Constitutional Claims

■ ¶ 18 In addition to the above reasoning, we also conclude the district court could not have heard the constitutional claims because Nebeker failed to raise these claims in his initial proceeding before the Tax Commission. Having failed to raise the issue in the initial proceeding, Nebeker waived any opportunity to bring it later either before the district court or in another forum.

¶ 19 This decision is supported by sound policy considerations. To begin, to hold otherwise would create procedural confusion and piecemeal litigation, as demonstrated by this very case. Nebeker is now involved in two actions over the same subject. Requiring filing of the constitutional claim in the initial Tax Commission proceeding eliminates such confusion by creating a single action to address all issues. This is true even though Nebeker must wait until the Tax Commission has ruled on all other issues to bring his constitutional claims in another court. See Indiana v. Sproles, 672 N.E.2d 1353 (Ind. 1996) (requiring parties to raise constitutional issues before the Department of State Revenue to preserve order in the tax collection process).

■ ¶ 20 Further, it gives the Tax Commission notice of a potential constitutional challenge. For instance, the Tax Commission may rethink its administrative rules if they are the subject of a potential constitutional challenge. Additionally, "Judicial attention to the constitutional issue, as well as other issues, will be better framed by the structure of a factual context" developed before the agency. Johnson, 621 P.2d at 1237. Lastly, to hold otherwise would give a petitioner a way to revive claims he had originally lost due to his own lack of diligence in failing to exhaust his administrative remedies. Therefore, parties must raise constitutional claims in the first instance before the agency.[4]

## II. TAX COMMISSION RULING

¶ 21 The next issue is whether the Tax Commission erred in ruling Nebeker's action was barred by res judicata. The standard of review is statutory:

**3.** Nebeker also claims the district court erred in dismissing the action because (1) it was proper to challenge the Tax Commission's action by filing a petition under rule 65B of the Utah Rules of Civil Procedure in district court, (2) governmental immunity did not bar the action, (3) the rule 65B petition was not filed outside any relevant limitations period, and (4) neither res judicata nor collateral estoppel bar the rule 65B petition. However, having reached this result, we need not address the other grounds upon which the district court relied in dismissing Nebeker's action. We note, however, that the latter three claims Nebeker raises deal with affirmative defenses and are irrelevant to a court's determination of a motion to dismiss for lack of jurisdiction. Further, we are skeptical of Nebeker's contention that the proper "independent action" available to him was a rule 65B petition. Even if Nebeker's petition were otherwise appropriate, a prerequisite to the filing of a rule 65B petition is that there be "no other plain, speedy and adequate remedy ... available." Utah R. Civ. P. 65B(a). That does not appear to be the case here. See footnotes 1–2, supra, and accompanying text; Utah Code Ann. § 59–1–602(1)(a) (authorizing an appeal to the district court, the court of appeals, or this court following a final Tax Commission ruling).

**4.** This is at least true where, as here, there are also non-constitutional claims that can be resolved before the Tax Commission that may obviate the need to address the constitutional question.

When reviewing formal adjudicative proceedings commenced before the commission, the Court of Appeals or Supreme Court shall:

  (a) grant the commission deference concerning its written findings of fact, applying a substantial evidence standard on review; and

  (b) grant the commission no deference concerning its conclusions of law, applying a correction of error standard, unless there is an explicit grant of discretion contained in a statute at issue before the appellate court.

Utah Code Ann. § 59–1–610 (2000).

¶ 22 We outlined the law relating to res judicata in *Macris & Associates., Inc. v. Neways, Inc.* as follows:

The doctrine of res judicata embraces two distinct branches: claim preclusion and issue preclusion.... Claim preclusion involves the same parties or their privies and also the same cause of action, "and this precludes the relitigation of all issues that could have been litigated as well as those that were, in fact, litigated in the prior action." ... Issue preclusion, on the other hand, "arises from a different cause of action and prevents parties or their privies from relitigating facts and issues in the second suit that were fully litigated in the first suit." ... Therefore, while both branches of res judicata "serve[ ] the important policy of preventing previously litigated issues from being relitigated," different rules govern each branch.

2000 UT 93, ¶ 19, 16 P.3d 1214 (citations omitted). In this case, the Tax Commission's dismissal relied on the theory of claim preclusion.

¶ 23 "Although initially developed with respect to the judgments of courts, the same basic policies, including the need for finality in administrative decisions, support application of the doctrine of [claim preclusion] to administrative agency determinations." *Salt Lake Citizens Congress v.*

*Mountain States Tel. & Tel. Co.,* 846 P.2d 1245, 1251 (Utah 1992) (citing 4 Kenneth C. Davis, *Administrative Law Treatise* § 21:9, at 78 (2d ed.1983) and *Jeffries v. Glacier State Tel. Co.,* 604 P.2d 4, 8–9 (Alaska 1979)). While claim preclusion applies to proceedings before administrative agencies, such as the Tax Commission, application of that principle presupposes the agency has the jurisdiction to resolve the issue. Claim preclusion "is premised on the principle that a controversy should be adjudicated only once." *Id.* at 1251. Yet, if the agency lacks jurisdiction, it cannot adjudicate the issue at all. In this case, for instance, even if Nebeker had presented the constitutional issue in the original proceeding, the Tax Commission could not have resolved that question as it lacks the authority to determine constitutional questions. *See Johnson,* 621 P.2d at 1237. However, as noted earlier, the Tax Commission could have resolved the dispute on other grounds, nullifying the need to address the constitutional claims at all. Yet, it remains that the constitutionality of IFTA could not have been litigated on the merits in the first proceeding before the Tax Commission. Therefore, the Tax Commission erred in ruling Nebeker's action was barred by res judicata.

¶ 24 Nevertheless, the constitutional challenge was the sole claim brought before the Tax Commission in this second proceeding. Because the issue was not within the Tax Commission's jurisdiction, the Tax Commission should have dismissed the action for lack of jurisdiction. *See Blaine Hudson Printing v. State Tax Comm'n,* 870 P.2d 291, 292 (Utah Ct.App.1994) ("Without subject matter jurisdiction, the ... agency lacks the power to do anything beyond dismissing the proceeding."). Accordingly, we affirm the Tax Commission's dismissal of the action although not on the grounds on which the Tax Commission relied.[5]

### III. JUDICIAL ESTOPPEL

¶ 25 In its motion to dismiss Nebeker's action before the Eighth District Court,

5. Further, even if the Tax Commission had the jurisdiction to resolve the constitutional claims, it would have been correct in dismissing the second proceeding because, as discussed earlier, Nebeker's failure to raise the constitutional issues in the initial Tax Commission proceeding operated as a waiver of his right to resolve those claims in a later proceeding.

the Tax Commission contended Nebeker's petition should be dismissed because the court lacked jurisdiction due to Nebeker's failure to exhaust administrative remedies. Following the district court's dismissal, Nebeker applied to the Tax Commission for a refund of overcharge pursuant to section 59-13-318. In its memorandum before the trial court, the Tax Commission argued this was a potential remedy Nebeker had not exhausted. However, when Nebeker filed that action, the Tax Commission argued it was barred by res judicata. Nebeker contends the res judicata argument represented a change in a position previously taken in litigation. We disagree.

¶ 26 Under judicial estoppel, "a person may not, to the prejudice of another person, deny any position taken in a prior judicial proceeding between the same persons or their privies involving the same subject matter, if such prior position was successfully maintained." *Tracy Loan & Trust Co. v. Openshaw Inv. Co.*, 102 Utah 509, 132 P.2d 388, 390 (1942). The Tax Commission's argument before the district court was that, rather than filing a petition for relief in district court, Nebeker could have filed an application for refund of overcharge. The Tax Commission did not argue that such a petition was still proper, only that it existed as a further administrative remedy that Nebeker had failed to utilize prior to filing his independent action. In responding to Nebeker's application for refund of overcharge, the Tax Commission did not change its position. Rather, it argued that while Nebeker once had the option of making such an application, the filing deadline had passed. The proper time to make the application had lapsed prior to Nebeker's initiation of his independent action in district court. We conclude the Tax Commission did not change its position on the exhaustion of remedies issue.

## CONCLUSION

¶ 27 We affirm the district court's dismissal of Nebeker's petition for failure to exhaust administrative remedies. Further, while the Tax Commission erroneously applied the doctrine of res judicata, we affirm its dismissal of Nebeker's application on the grounds the

Tax Commission lacked jurisdiction to review the constitutional issues. Nevertheless, having failed to raise those constitutional issues in the initial assessment proceeding, we conclude, based on the policy reasons above, Nebeker waived the right to bring those issues later before a tribunal with jurisdiction over such claims. Finally, the Tax Commission did not violate the principle of judicial estoppel by arguing res judicata before the Tax Commission.

¶ 28 Chief Justice HOWE, Associate Chief Justice RUSSON, Justice DURHAM, and Justice WILKINS concur in Justice DURRANT's opinion.