2009 UT 74

Nathan H. MERRILL, Petitioner,

v.

UTAH LABOR COMMISSION; Vermax of Florida, Inc., dba Dakota Cabinets; Workers Compensation Fund; and Wausau Business Insurance, Respondents.

No. 20070584.

Supreme Court of Utah.

Dec. 4, 2009.

Phillip B. Shell, Salt Lake City, for petitioner.

Sharon J. Eblen, Salt Lake City, for respondents.

Alan Hennebold, Salt Lake City, for Labor Commission.

James R. Black, Thomas R. Lee, Eugene C. Miller, Salt Lake City, for amicus Workers Compensation Fund.

On Petition for Rehearing *

DURHAM, Chief Justice:

## INTRODUCTION

¶ 1 Respondent, Wausau Business Insurance, petitioned for rehearing regarding the retroactive application of our ruling in *Merrill v. Utah Labor Commission*, 2009 UT 26, 223 P.3d 1089. In *Merrill*, we held that the offset of Utah Code section 34A–2–413(5) was a constitutional violation. *Id.* ¶ 1. Respondent contends that we should, in our equitable discretion, limit the retroactive operation of our ruling.

* *See Merrill v. Utah Labor Comm'n,* 2009 UT 26,

## BACKGROUND

¶ 2 Because a complete recitation of the facts is found in *Merrill v. Utah Labor Commission*, we list only those facts relevant to this rehearing. *See* 2009 UT 26, ¶¶ 2–4, 223 P.3d 1089. In *Merrill*, Petitioner, Nathan H. Merrill, challenged Utah Code section 34A–2–413(5) as a violation of "the Equal Protection Clauses of the Utah and United States Constitutions by discriminating on the basis of age." *Id.* ¶ 1. Section 34A–2–413(5) reduced workers' compensation benefits of individuals receiving both workers' compensation benefits and social security retirement benefits by fifty percent of the amount of their social security retirement benefits. *Id.* On rational basis review, we agreed with Mr. Merrill and held that this offset violated the uniform operation of laws provision of the Utah Constitution. *Id.* ¶¶ 1, 8, 38. The court published its opinion in *Merrill* on April 24, 2009.

¶ 3 Following publication and pursuant to Utah Rule of Appellate Procedure 35, Respondent, joined by Amicus Curiae, Workers Compensation Fund, timely filed a petition for rehearing regarding the retroactive application of our ruling in *Merrill*. We granted the petition.

## ANALYSIS

¶ 4 On rehearing, Respondent argues that our ruling in *Merrill* should only be given prospective effect in light of the insurance industry's reliance on the offset and the burdens that would be imposed by retroactive operation. We look first to the question of whether we should exercise our equitable discretion in limiting the retroactive operation of our ruling in *Merrill*. Because we conclude that some limitation is warranted, we then address the limited retroactive operation of our ruling.

I. IN BALANCING THE EQUITIES PRESENTED, WE LIMIT THE RETROACTIVE OPERATION OF OUR RULING

¶ 5 "The general rule from time immemorial is that the ruling of a court is

223 P.3d 1089.

deemed to state the true nature of the law both retrospectively and prospectively." *Malan v. Lewis*, 693 P.2d 661, 676 (Utah 1984). In civil cases, however, the court may, in its equitable discretion, prohibit or limit retroactive operation of its ruling "where the overruled law has been justifiably relied upon or where retroactive operation creates a burden." *Id.* (internal quotation marks omitted). While these interests weigh heavily, this court does not ignore the underlying considerations that led to the correction of law. *See Rio Algom Corp. v. San Juan County*, 681 P.2d 184, 196 (Utah 1984). Nor does the court cast aside the efforts of successful litigants and deprive them of "the fruits of their victory," as doing so would "discourage challenges to statutes of questionable validity." *Id.* Therefore, "[i]n fashioning an equitable remedy, ... the court should seek a blend of what is necessary, what is fair, and what is workable." *Id.*

¶ 6 A few of our cases have merited purely prospective application. For example, in *Loyal Order of Moose v. County Board of Equalization*, the court gave pure prospective effect to its decision. 657 P.2d 265 (Utah 1982). Specifically, the court "harbor[ed] concern for the harsh effect" that its interpretation of a tax exemption would have on nonprofit entities that had relied upon the court's previous interpretation "for so many years," and because retroactivity might result in an unreasonable burden of back taxes. *Id.* at 264–65. In *Rio Algom Corp.*, the court limited its ruling to prospective application, with the exception of the prevailing litigants. 681 P.2d at 196. In doing so, the court cited to local governments' reliance on the validity of a tax in light of "strained budgets" and the risk to their solvency. *Id.* at 195. We cited to the "great financial and administrative hardship" that would be imposed by retroactive effect where numerous past payments had been made under protest and would need to be reopened. *Id.* at 195–96.

¶ 7 Respondent compares the effect of our ruling in *Merrill* to that of *Loyal Order* and *Rio Algom*. Specifically, Respondent argues that it, as well as the workers' compensation insurance industry, justifiably relied on the presumptive constitutionality of the offset in

section 34A–2–413(5) in establishing premiums and an insurance structure. It had done so since 1988, when the Utah Legislature enacted the statute. Moreover, Respondent argues that because the offset could only be, and in fact was, challenged on rational basis review, this generally deferential standard of review did not signal a likelihood of constitutional infirmity. Respondent emphasizes that although we ruled the offset to be unconstitutional, we did note in *Merrill* that other states have upheld such an offset. 2009 UT 26, ¶ 35.

¶ 8 Further, Respondent points out that retroactive application would impose significant financial, administrative, and competitive burdens. While prospective application of the court's ruling can be resolved by an adjustment in workers compensation rates, premiums, and a premium tax, no such solution will be possible for retroactive application. Instead, the cost of retroactive payments would be shifted from past employers to current employers. Also, an insurance company or a self-insured employer would be forced to make payments from its equity, which could lead to a ratings downgrade, insolvency, regulatory oversight, or potential liquidation. Administratively, retroactive application would open up many workers compensation claims that have been settled and resolved. Respondent asserts that these adverse consequences would make Utah an undesirable market for insurance companies.

¶ 9 Mr. Merrill agrees that the issue before the court is one of equity. He asserts that while a negative financial impact will occur, its scope is not as far reaching as Respondent suggests. He calculates that retroactive application applied to past payments will total less than $15 million industrywide. While this is a significant amount, it appears manageable when compared to the more than $320 million in dividends distributed since 1990 to the policyholders of Utah's largest workers' compensation insurance carrier, the Workers Compensation Fund.

¶ 10 Moreover, unlike *Loyal Order* and *Rio Algom*, the underlying scheme at issue in *Merrill* relates not to taxes, but to workers compensation. The Workers Compensation Act is designed to help injured workers.

The system of compromises that comprises workers compensation as a whole mandates exclusivity; both workers and employers give up the right to litigate. At the heart of this scheme lies a balance of interests predicated on fairness. Despite this goal, our decision means that the statutory offset has for nearly two decades unconstitutionally deprived workers of monies rightfully owed to them.

¶ 11 Nonetheless, the question of retroactivity is tied to fundamental fairness and equity across the board. In balancing the equities before us, we recognize that a justified reliance on the constitutionality of the statute existed and that full retroactive application of our ruling would create significant burdens. Yet we remain mindful of the underlying workers compensation scheme and the constitutional violation. Therefore, although we decline to give purely prospective application, we limit, to an extent, the retroactive operation of our ruling in *Merrill*.

## II. LIMITED RETROACTIVE OPERATION OF MERRILL V. UTAH LABOR COMMISSION

¶ 12 In helping identify the effect of retroactivity, Respondent has presented several useful categories, on which we rely in narrowing the application of our *Merrill* ruling: (1) payments to injured workers made after publication of the April 24, 2009, decision (future payments); (2) payments made before publication (past payments); and (3) inactive and/or unspecified payments to claimants (inactive/unspecified payments).

■ ¶ 13 Before examining each of these categories, we direct that our ruling be given full retroactive effect as it pertains to Mr. Merrill. He is entitled to compensation for his pursuit of this constitutional challenge.

### A. Prospective Application Applies to All Future Payments

■ ¶ 14 For any future payments, as defined above, regardless of the date of injury, our ruling applies. At oral argument counsel informed the court that the Employers Reinsurance Fund has corrected its practice and is already making future payments in accordance with our ruling. It was represented to us, however, that the Workers Compensation Fund has, at least in some instances, continued the practice we held unconstitutional in *Merrill*. Instead of disregarding the unconstitutional offset, the Workers Compensation Fund is apparently still including the offset in calculating and making future payments to the affected class of injured workers. It defends this practice in reducing these future payments by reference to the date of the worker's injury, rather than by reference to the date of *Merrill's* publication. This practice misunderstands prospective operation. No one may take offsets for payments made after the date of our ruling. If an ongoing stream of future payments exists from and after April 24, 2009, our ruling applies to them.

### B. Retroactive Operation Applies to All Seeking Past Payments Except for Those Who Settled Their Claims

■ ¶ 15 In contrast, retroactive operation of *Merrill* to past payments requires us to draw a fine line, looking to the concepts of waiver and finality.

¶ 16 Respondent directs us to *Nebeker v. Utah State Tax Commission*, 2001 UT 74, 34 P.3d 180. There, we discussed a petitioner's failure to raise a constitutional argument before the tax commission. *Id.* ¶¶ 15–24. We noted that despite the tax commission's lack of jurisdiction to determine the constitutionality of legislation, the petitioner's failure to raise the constitutional argument constituted a waiver. *Id.* ¶ 24 n. 5. We have since narrowed this concept of waiver of a constitutional argument before state agencies. *See ABCO Enters. v. Utah State Tax Comm'n*, 2009 UT 36, ¶¶ 8–12, 211 P.3d 382 (holding that where the "sole issue on appeal is a facial constitutional challenge to a tax statute, we may address that challenge on appeal even if it has not been explicitly raised before the administrative agency"). Nonetheless, the considerations underlying waiver have relevance as we exercise our discretion in this case.

■ ¶ 17 Furthermore, there is a justified need for "finality in administrative decisions." *Nebeker*, 2001 UT 74, ¶ 23, 34 P.3d 180 (internal quotation marks omitted).

While the Labor Commission has continuing jurisdiction pursuant to Utah Code section 34A–2–420, it lacks the authority to reopen workers compensation proceedings to consider legal arguments not previously made. *See* Utah Code Ann. § 34A–2–420 (2005); *see also Spencer v. Indus. Comm'n*, 4 Utah 2d 185, 290 P.2d 692, 694 (1955) (noting that party cannot "file a new application and have the Commission redetermine his cause on identical facts" because he is dissatisfied with the former order). Also, we have noted that a judgment "based upon an erroneous view of the law is not open to collateral attack, but can be corrected by a direct review and not by bringing another action upon the same cause [of action]." *Collins v. Sandy City Bd. of Adjustment*, 2002 UT 77, ¶ 18, 52 P.3d 1267 (alteration in original).

¶ 18 Arguing from the above principles, Respondent would have us draw the line on retroactivity to preclude application of *Merrill* to all cases that resulted in an administrative order in the Labor Commission, including both adjudicated cases and cases resulting in a settlement approved by order of an administrative law judge. While we agree to an extent, we believe that waiver and finality are most applicable to settled cases. Settlements, we believe, should not be upset, even because of a change in the law; the process of compromise they represent is too multifaceted and context-driven to permit unwinding. The parties to a settlement each bear the risk of a subsequent change in or clarification of the law—a risk that could cut either way.

¶ 19 Accordingly, for claimants who actively negotiated and settled their claims, and thus chose not to challenge the offset, our ruling will have no retroactive effect. But if a claimant's mere acquiescence or challenges on other grounds, constitutional or not, resulted in an administrative order, then our ruling will apply retroactively and allow recoupment regarding past payments from their inception.

*C. Retroactive Operation Does Not Apply for Inactive or Unspecified Payments*

¶ 20 Finally, we turn to the third category of inactive/unspecified payments. This category involves those claimants who are now deceased, who settled their claims for payment of a lump sum, or who disputed claims but settled without obtaining an express designation of permanent total disability. Again invoking the concepts of waiver and finality, we conclude that the claimants in this category have, for whatever reason, foregone the ability to recoup payments. We therefore prohibit retroactive application of our ruling to this category of individuals.

## CONCLUSION

¶ 21 Although we concede that the workers compensation industry justifiably relied on the offset contained in Utah Code section 34A–2–413(5) and that significant financial and administrative burdens would be imposed if our ruling in *Merrill v. Utah Labor Commission*, 2009 UT 26, 223 P.3d 1089, were given full retroactive effect, we are also persuaded by the equities inherent in the workers compensation scheme. We therefore direct that our ruling be given limited retroactive operation consistent with this opinion.

¶ 22 Associate Chief Justice DURRANT, Justice WILKINS, and Justice PARRISH concur in Chief Justice DURHAM's opinion.

¶ 23 Justice NEHRING does not participate herein.